UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| AMICHAI BERGMAN, pleading on his own behalf and on behalf of all other similarly situated consumers,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>COX COMMUNICATIONS INC.,<br><br>　　　　　Defendant. | Case No.:<br><br>CLASS ACTION COMPLAINT |

# **PRELIMINARY STATEMENT**

1.　Plaintiff Amichai Bergman ("Plaintiff") seeks relief against Defendant Cox Communications Inc. ("Cox" or "Defendant") for its unlawful business practice of obtaining and using consumer credit reports when the consumer is merely inquiring about potential service, in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., ("FCRA").

2.　Despite customers not ordering its services or initiating a purchase transaction, Defendant routinely accesses credit reports of potential customers prior to those customers consenting to said credit inquiry ("pull") or even knowing about it.

3.　A consumer's general request for product and services pricing from a sales representative does not provide a legal basis to initiate a credit inquiry. See, e.g., Federal Trade Commission Advisory Opinion to Coffey (2-11-98).

## JURSIDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 15 U.S.C. §1692k(d).

5. Venue is proper in this district under 28 U.S.C §1391(b).

## PARTIES

6. Plaintiff is natural person residing in Phoenix, Arizona.

7. Defendant is a Delaware corporation that regularly conducts business in Arizona with its principal place of business located at 6205 Peachtree Dunwoody Rd., Atlanta, Georgia 30328.

## FACTUAL STATEMENT

8. On or around July 18, 2016, Plaintiff contacted Cox by phone to learn about its services and pricing.

9. After hearing about Cox's offerings, Plaintiff chose not to proceed with the services offered.

10. During the call, Plaintiff was never informed that he may have his credit pulled, nor was Plaintiff informed of any reason that Cox would be pulling his credit.

11. Nonetheless, the next day Plaintiff was notified that Cox had in fact made "hard inquiry" on Plaintiff's credit report from Equifax, Experian, and TransUnion.

12. After learning of the pull, Plaintiff mailed Cox a letter stating that the inquiry was not authorized and requesting that Cox have the inquiry removed. Cox took no action in response to this letter, leaving Plaintiff with an unauthorized hard inquiry on each of his three credit reports.

13. This is not the first time that Cox has made an unauthorized "hard inquiry."

14. One consumer on FicoForums has written:

> So a Cox communications salesman was coming door to door looking for business. He offered me a great deal on internet service and I'm fed up with my slow at&t dsl. I filled out no paperwork or application the guy just took my info and went to his car to set up the install. Today I get the Fico alert that I had an inquiry on 10/2 by cox communications. I'm assuming this is a hp. Do I have any recourse? they never told me they were going to do a hp and if they did I would have declined their offer.[1]

15. Plaintiff's experience, along with the above publicly available information, demonstrates that Cox has a habit of performing unauthorized inquiries on consumers' credit reports.

16. Upon information and belief, Defendant instructs its agents to request identification information from consumers prior to providing information about the availability and pricing of services.

17. Upon information and belief, Defendant instructs its agents to input that consumer identification information into Defendant's automated systems as a requirement of obtaining information concerning the availability and price of services.

---

[1] http://ficoforums.myfico.com/t5/General-Credit-Topics/Cox-Cable-HP/td-p/2492557

18. Defendant does not notify consumers that upon providing identifying information, Defendant will perform a credit inquiry on his or her credit report.

19. Defendant's practice causes real and concrete injury to consumers. Plaintiff and other consumers had their personal, private financial information impermissibly accessed in the absence of any written request for services, and without consent. The impermissible access of private and confidential information contained within a consumer's credit report violates the privacy rights conveyed by Congress in enacting the FCRA.

20. Defendant's interference with a consumer's legally protected interest in ensuring his or her credit is not impermissibly accessed and used constitutes injury in fact for purposes of Article III standing. Here, Defendants' action resulted in a concrete and particularized harm – a hard inquiry and an attendant score drop.

21. Accordingly, Defendant impermissibly invaded Plaintiff and other consumers' legally protected interest in ensuring their credit reports are only accessed and used for legally permissible purposes, proximately causing cognizable injury.

## CLASS ACTION ALLEGATIONS

### The Class

22. Plaintiff brings this as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all others similarly situated who have been subject to illegal credit pulls from Defendant.

23. Plaintiff seeks certification of the following classes, initially defined as follows:

> Class 1 – Impermissible Access. All natural persons residing in the United States or its territories, excluding the Court and staff, whose consumer reports display an inquiry by Defendant, and for which Defendant has no open account or record of a written request for an account.
>
> Class 2 – Impermissible Use. All natural persons residing in the United States or its territories, excluding the Court and staff, whose consumer reports are recorded as received by Defendant, and for which there is a record of a review of that data in Defendant's possession.

24. Excluded from the Classes is Defendant herein, and any person, firm, trust, corporation, or other entity related to or affiliated with the Defendant, including, without limitation, persons who are officers, directors, employees, associates or partners of Defendant.

## Numerosity

25. Upon information and belief, Defendant has made impermissible credit pulls, and impermissibly used credit information of hundreds of consumers throughout the United States, each of which violates the FCRA. The members of the classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

26. The exact number and identities of the class members are unknown at this time and can only be ascertained through discovery. Identification of the class members is a matter capable of ministerial determination from Defendant's records.

## Common Questions of Law and Fact

27. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. These common questions of law and fact include, without limitation: (i) whether Defendant violated various provisions of the

5

FCRA; (ii) whether Plaintiff and the class have been injured by Defendant's conduct; and (iii) whether Plaintiff and the class have sustained damages and are entitled to restitution as a result of Defendant's wrongdoing and, if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution.

### Typicality

28. The Plaintiff's claims are typical of the claims of the class members. Plaintiff and all potential class members have claims arising out of the Defendant's common uniform course of conduct complained of herein. Plaintiff's claims are typical of the claims of the Class, and Plaintiff has no interests adverse or antagonistic to the interests of other members of the Class.

### Protecting the Interests of the Class Members

29. Plaintiff will fairly and adequately represent the class members' interests, in that the Plaintiff's counsel is associated with experienced counsel and, further, anticipates no impediments in the pursuit and maintenance of the class action as sought herein.

30. Neither the Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue the instant class action lawsuit.

### Proceeding Via Class Action is Superior and Advisable

31. The members of the Class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action.

32. Prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties.

33. Because Defendant has acted on grounds generally applicable to the proposed classes, final injunctive and corresponding declaratory relief with respect to the classes as a whole may be appropriate and as such, Plaintiff may seek certification under Fed. R. Civ. P. 23(b)(2) or (b)(3). Without an injunction, Defendant's violative business practices are likely to continue.

34. Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify one or more classes only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

35. A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment also will permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

36. Absent a class action, the class members will continue to suffer losses borne from Defendant's breaches of class members' statutorily protected rights as well as monetary damages, thus allowing and enabling: (a) Defendant's conduct to proceed and; (b) Defendant to further enjoy the benefit of its ill-gotten gains.

37. Defendant has acted, and will act, on grounds generally applicable to the entire class, thereby making appropriate a final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## COUNT I
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

38.     Plaintiff repeats the allegations contained in the above paragraphs and incorporates them as if specifically set forth at length herein.

39.     Section 1681b of the FCRA limits access to consumer credit reports and requires that specific requirements be met before a report is requested.

40.     Defendant willfully violated 15 U.S.C. § 1681b(f) by obtaining consumer reports without a permissible purpose.

41.     Defendant maintained procedures and practices under which its agents, contractors or employees obtained reports before the consumer signed up for telecom services, filled out a credit application, or otherwise requested services.

42.     Defendant maintained procedures and practices under which its agents, contractors or employees misrepresented whether and under what circumstances Defendant would access consumer reporting data.

43.     Defendant represented to the credit reporting bureau(s) from which it obtained consumer reports that it would request and use reports obtained from such bureau(s) only for lawful purposes pursuant to 15 U.S.C. § 1681b.

44.     Defendant knows that 15 U.S.C. §§ 1681b, 1681n, and 1681q requires it to refrain from impermissible access and obtaining consumer reports under false pretenses.

45.  Merely inquiring as to the availability of service in a certain area and simple rate shopping does not invoke a business transaction initiated by the consumer, and thus, Defendant did not have any of the permissible purposes set forth in 15 U.S.C. § 1681b(a)(3)(A-G) when it obtained Plaintiff's and the proposed class members' consumer reports. There was no agreement to exchange goods or services for money as Plaintiff and the proposed class members had not signed up for telecom services when Defendants accessed their consumer reports.

46.  Defendant violated 15 U.S.C. §§ 1681b, 1681n, and 1681q by obtaining Plaintiff's and the proposed class members' consumer reports under false pretenses, without a permissible purpose, and without consent. Defendant had no legitimate business need to obtain these consumer reports since no business transactions had been initiated by these consumers at the time that Defendant accessed those reports.

47.  Defendant is liable for its willful or, alternatively, negligent violations of FCRA provisions §§ 1681b, 1681n, and 1681q under 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, Amichai Bergman, respectfully requests that this Court do the following for the benefit of Plaintiff:

a.  Enter an Order declaring Defendant's actions, as described above, in violation of the FCRA;

b.  Enter an Order for Injunctive Relief preventing Defendant from pulling and using credit reports illegally;

c.  Appoint Plaintiff as the Class Representative, and appoint Plaintiff's Counsel as Lead Counsel for the Class;

d.  Enter a judgment against Defendant for statutory and punitive damages for Plaintiff and the classes;

e.  Award costs and reasonable attorneys' fees; and

f.  Grant such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

48. Plaintiff demands a jury trial on all issues so triable.

Dated this 19th of December, 2017.

Respectfully Submitted,

/S/ John Prather
John Prather, Esq.
5864 N. 83rd Street
Scottsdale, AZ 85250
(480) 296-1507
johnlprather@gmail.com